UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

```
USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: _7/27/2021_
```

MARIA THERESA C. VINLUAN,
*on her own behalf and on behalf of her disabled*
*child D.V.* & MATTHEW VINLUAN,

                                        Plaintiffs,

        -against-

ARDSLEY UNION FREE SCHOOL DISTRICT, et
al.

                                        Defendants.

19-cv-6496 (NSR)
OPINION & ORDER

NELSON S. ROMÁN, United States District Judge

        Plaintiffs Maria Theresa C. Vinluan ("MTV"), on behalf of herself and her disabled child

D.V. ("DV"), and Matthew Vinluan ("MV"), bring this action against Defendants Ardsley Union

Free School District ("Ardsley"), Jaspan Schlesinger, LLP ("Schlesinger"), Jeanne Farruggio

("Farruggio"), Rudy Arietta ("Arietta"), James Matera ("Matera"), Lauren Allan ("Allan"),

Steven Kastin ("Kastin"), Carol Melnick ("Melnick"), Thomas Fischer ("Fischer"), and Lena

Martino ("Martino", together "Defendants") alleging violations of the Individuals with

Disabilities Education Act ("IDEA"), Section 504 of the Rehabilitation Act ("Section 504"), the

Americans with Disabilities Act ("ADA"), and Sections 1983 and 1985 of the Civil Rights Act

("Section 1983" and "Section 1985" respectively). (ECF No. 36.) Plaintiff MTV commenced this

action *pro se*; however, on April 14, 2020, Plaintiffs obtained counsel. (ECF Nos. 62 & 63.)

        On March 24, 2020, Defendants moved to dismiss the Second Amended Complaint.

(ECF No. 57.) For the following reasons, Defendants' motion is GRANTED in part and

DENIED in part**.**

**BACKGROUND**

The following facts are taken from Plaintiff's Second Amended Complaint, dated November 27, 2019. (Second Amended Compl. ("SAC") (ECF No. 36).) The Court notes that the SAC is one hundred pages long and contains allegations regarding events over a long period of time. The facts below are meant to provide relevant background and are not comprehensive.

MTV is the mother of four disabled children, including MV, DV, and WV. (SAC ¶ 12.) The family has resided in Ardsley since 2004. (*Id*.)

**<u>MV</u>**

While registered as an Ardsley student, MV suffered from autism spectrum disorder ("ASD"), attention deficit hyperactivity disorder ("ADHD"), auditory processing disorder, and language impairment. (SAC ¶ 41.) During his enrollment, MV received an Individualized Education Program ("IEP") delineating services to be provided to him pursuant to the IDEA. (SAC ¶ 42.)

Plaintiffs allege an array of deficiencies with the services MV received including that (1) by providing MV with an aide for ten years, Ardsley "abrogated its responsibility to instruct MV in a manner that ensures his achievement of strategies that would enable him to regulate himself independently, to manage his time, tasks, and attention in classes, and ultimately to succeed in independent living" (*Id*. ¶ 45); (2) Defendants failed to perform a functional behavioral assessment ("FBA") on MV or develop a Behavior Intervention Plan ("BIP") (*Id*. ¶ 46); (3) Defendants delayed performing a vocational evaluation for MV until 8th grade, limiting MV's opportunity to address career-readiness issues while in middle school (*Id*. ¶ 49); (4) Ardsley failed to provide MV with prior written notice of its intent to perform a vocational evaluation and failed to present the results of that evaluation during a May 2011 Committee on Special

Education ("CSE") meeting (*Id*. ¶ 50); (5) Ardsley failed to instruct MV in a manner that allowed him to acquire the commencement level Career Development and Occupational Studies ("CDOS") based skills necessary to succeed in a post-secondary setting (*Id*. ¶ 48); (6) the CSE failed to present MV with options for MV to avail himself of career and technical education ("CTE") classes (*Id*. ¶ 51); (7) Defendants failed to provide MV with appropriate career exploration opportunities (*Id*. ¶ 54-55); (8) Ardsley failed to support MV in meeting the CDOS Commencement Credential ("CC") criteria (*Id*. ¶ 68); (9) Defendants wrongfully awarded MV the CDOS CC credential on the basis of MV's attendance in his Veterinary Science class notwithstanding the fact that MV failed to achieve CDOS Learning Standards ("LS"), as required for the credential (*Id*. ¶ 91-100); and (10) Defendants modified the requirement for graduation in order to expedite MV's exit from the school and terminate his eligibility for a Free and Appropriate Education ("FAPE") under IDEA (*Id*. ¶ 120-135.)

Plaintiffs further allege that Defendants discriminated against MV by setting low expectations for MV "based on the stereotype that a disabled student should not be expected to meet the same requirements as the non-disabled." (*Id*. ¶ 136.) Because MTV believed that Defendants failed to support MV, MTV enrolled MV in the Step Forward Program at Gateway Community College and sought counseling and neurofeedback services. (*Id* ¶ 150-154.) Plaintiffs also allege that in the summer of 2014—prior to MV's graduation—MV began attending classes at Westchester Community College ("WCC") for his own enrichment and for the purpose of earning credits towards a college degree. (*Id*. ¶ 155.) Plaintiffs allege that Ardsley then improperly obtained information regarding those courses and applied them to Plaintiff's high school transcript, improperly supporting MV's premature graduation. (*Id*. ¶ 155-203.)

3

In September 2016, MTV filed a due process complaint alleging violations of the IDEA, New York State Law, and Constitutional violations. (*Id*. ¶ 204.) The Impartial Hearing Officer ("IHO") dismissed the complaint. Ardsley's Counsel indicated that Ardsley had a policy of not allowing the inclusion of Section 504 claims during the impartial hearing process and sent a letter so indicating to Allen, Farruggio, and Kastin. (*Id*. ¶ 205-06.) On June 21, 2017, MTV re-filed a due process complaint, requesting reimbursement for tuition and services for MV's private placement and compensatory services. (*Id*. ¶ 215). During a hearing, Ardsley's Counsel, Melnick, allegedly orchestrated testimony and distorted evidence to give the false impression that MTV had been given adequate notice or that Ardsley had taken courses of action to provide FAPE. (*Id*. ¶ 217-228.)

**<u>DV</u>**

DV is a 16-year-old student who attends Ardsley's high school. (*Id*. ¶ 343.) As a middle and high school student, DV's teachers and guidance counselor expressed concern regarding DV's tendency to fall asleep in class; however, no school staff referred DV for an evaluation for services or accommodations under the IDEA or Section 504. (*Id*. ¶ 344-47.) MTV informed DV's teachers that she would have DV see a sleep specialist, but the school staff failed to initiate any evaluations of their own. (*Id*. ¶ 348-49.)

In April 2018, DV underwent a sleep study and was diagnosed with obstructive sleep apnea. (*Id*. ¶ 350.) Sleep apnea substantially limits DV's sleeping capabilities and results in diminished alertness in the learning environment, which impacts DV's ability to learn and his school performance. (*Id*. ¶ 351.) On May 18, 2018, MTV referred DV for evaluation for an IEP and/or an accommodation plan under Section 504; however, rather than formulating a formal accommodation plan including accommodations such as exemption from penalties for failing to

4

turn in work, Arietta and DV's guidance counselor indicated that they would inform DV's teachers of the situation and leave accommodations to their individual discretion. (*Id*. ¶ 352-54.)

Plaintiffs allege that DV's final grades were lower than expected given his academic strengths, that the CSE improperly evaluated DV by assessing him via standardized testing only, and that Ardsley failed to conduct a Level 1 Career Assessment. (*Id*. ¶ 355-59.) The CSE agreed that DV underperformed his academic potential and agreed to provide him with counseling and Resource Room sessions to assist with homework completion and self-management skills. (*Id*. 361-62.) The CSE denied MTV's request for an IEP for DV, stating that DV did not meet the eligibility criteria for an IEP. (*Id*. ¶ 367.) MTV requested an Independent Educational Evaluation ("IEE"), which was denied. (*Id*. ¶ 370-71.)

On July 23, 2016, MTV filed a due process complaint, alleging, among other things, that Ardsley erred by providing DV services under Section 504 instead of an IEP. (*Id*. ¶ 373.) On August 2, 2018, Farruggio affirmed Ardsley's decision to deny funding for diagnostic medical evaluations. (*Id*. ¶ 375.) On August 3, 2018, MTV amended the complaint to allege that Ardsley's policy of declaring diagnostic medical evaluations to be outside the scope of the CSE was a violation of the IDEA. (*Id*. ¶ 376.) On August 28, 2018, the CSE reconvened and declared DV eligible for an IEP and thereafter moved to dismiss the complaint on the grounds of mootness, which MTV opposed. (*Id*. ¶ 377-80.) The IHO granted Ardsley's motion and dismissed the complaint. MTV appealed and the State Review Officer ("SRO") reversed the IHO's decision, finding that MTV's non-IDEA claims and claims for systemic violations were outside the jurisdiction of the administrative process, but noted that Ardsley did not indicate whether it addressed Section 504 claims in an impartial hearing and remanded for clarification

and adjudication. (*Id*. § 381-382.) The SRO remanded to the IHO the remaining claims regarding compensatory services. (*Id*. § 383-84.)

MTV and Ardsley representatives Farruggio and Seda verbally agreed to a settlement whereby DV would receive compensatory services in the form of six summer counseling sessions. (*Id*. ¶ 385-86.) Ardsley also offered to reimburse MTV for expenses incurred for DV's consultation with a sleep specialist. (*Id*. ¶ 387.) However, when Ardsley's counsel, Melnick, drafted a settlement agreement, the agreement contained new terms, namely that MTV abandon all claims, including non-IDEA and systemic IDEA claims. (*Id*. ¶ 388-89.) "Due to pressures from simultaneously dealing with deadlines for administrative procedures pertaining to her other sons, MV and WV, [MTV] was forced to defer proceedings by voluntarily withdrawing her claims pertaining to DV's remanded issues, which the IHO dismissed without prejudice on May 25, 2019." (*Id*. ¶ 396.)

## **WV**

The majority of the factual allegations pertaining to WV were summarized in a recent Opinion & Order issued in Case No. 19-cv-10674. (Case No. 19-cv-10674, ECF No. 29.) The Court assumes familiarity with that Opinion & Order.

\*\*\*

Plaintiffs bring the following causes of action: (1) seeking judicial review of the SRO Decision No. 19-004 by MTV and MV against Ardsley (SAC at 40); (2) *de novo* claims pursuant to the IDEA and New York Education Laws for the 2014-15, 2015-16, 2016-17, and 2017-18 School Years by MTV and MV against Ardsley (SAC at 61); (3) claims for systemic violations of the IDEA by MTV, MV, WV, and DV against Ardsley (SAC at 62); (4) a claim for "deprivation of rights and procedural safeguards secured by the IDEA by persons acting under

color of law" pursuant to 42 U.S.C. § 1983, brought by MTV, WV, DV, and MV against

Ardsley, Farruggio, Arietta, Kastin, and Allan (SAC at 63); (5) violation of the Child Find

Provisions of the IDEA and § 504 of the Rehabilitation Act of 1973, brought by MTV and DV

against Ardsley (SAC at 72); (6) discrimination in violation of § 504 of the Rehabilitation Act of

1973 and Title II of the Americans with Disabilities Act, brought by MTV, MV, WV, and DV

against Ardsley (SAC at 73); (7) retaliation, intimidation, and interference in violation of Title II

of the Americans with Disabilities Act and § 504 of the Rehabilitation Act of 1973, brought by

MTV, DV, and MV against Ardsley (SAC at 81); (8) deprivation of equal protection of the laws

under the Fourteenth Amendment, pursuant to 42 U.S.C. § 1983, brought by  MTV and MV

against Ardsley, Schlesinger LLP, Farruggio, Arietta, Allan, Kastin, Matera, Martino, Fischer,

and Melnick (SAC at 85); (9) deprivation of due process rights in violation of the Fourteenth

Amendment, pursuant to 42 U.S.C. § 1983, brought by MTV and MV against Ardsley,

Farruggio, Arietta, Allan, and Kastin (SAC at 89); (10) conspiracy to deprive Plaintiffs of their

civil rights, pursuant to 42 U.S.C. §§ 1983 and 1985, brought by MTV and MV against Ardsley,

Schlesinger, LLP, Farruggio, Arietta, Matera, Martino, Allan, and Melnick (SAC at 92); and (11)

a claim for punitive damages brought pursuant to 42 U.S.C. §§ 1983 and 1985 (SAC at 99).

Defendants moved to dismiss. (ECF No. 57.)

## STANDARD OF LAW

Under Federal Rule of Civil Procedure 12(b)(6), a motion to dismiss is proper unless the

complaint "contain[s] sufficient factual matter, sufficient factual matter, accepted as true, to

'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)

(quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). When there are well-pleaded

factual allegations in the complaint, "a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief." *Id*. at 679.

While the Court must take all material factual allegations as true and draw reasonable inferences in the non-moving party's favor, the Court is "*not* bound to accept as true a legal conclusion couched as a factual allegation," or to credit "mere conclusory statements" or "[t]hreadbare recitals of the elements of a cause of action." *Iqbal*, 556 U.S. at 662, 678. (quoting *Twombly*, 550 U.S. at 555) (emphasis added). The critical inquiry is whether the plaintiff has pled sufficient facts to nudge the claim(s) "across the line from conceivable to plausible." *Twombly*, 550 U.S. at 555; *see also Iqbal*, 556 U.S. at 678 (noting that a claim is facially plausible when the factual content pleaded allows a court "to draw the reasonable inference that the defendant is liable for the misconduct alleged"). While it is not necessary for the complaint to assert "detailed factual allegations," it still must allege "more than labels and conclusions." *Twombly*, 550 U.S. at 555. The facts in the complaint "must be enough to raise a right to relief above the speculative level on the assumption that all the allegations in the complaint are true." *Id*.

*Pro se* complaints are held to different, more relaxed standards, as courts must construe *pro se* pleadings more liberally than they would non-*pro se* pleadings. *Harris v. Mills*, 572 F.3d 66, 72 (2d Cir. 2009). Further, courts must interpret the *pro se* plaintiff's pleading "to raise the strongest arguments that [it] suggest[s]." *Harris v. City of New York.*, 607 F.3d 18, 24 (2d Cir. 2010) (internal quotations and citation omitted). Nonetheless, in order to be entitled to relief, a *pro se* plaintiff's complaint must contain sufficient factual allegations which would plausibly entitle them to relief. *Jackson v. N.Y.S. Dep't of Labor*, 709 F. Supp. 2d 218, 224 (S.D.N.Y. 2010). To that point, where an allegation lacks an essential, necessary element to the entitlement

of relief, a court's "duty to liberally construe a plaintiff's complaint [is not] the equivalent of a duty to re-write it." *Geldzahler v. N.Y. Med. Coll.*, 663 F. Supp. 2d 379, 387 (S.D.N.Y. 2009) (internal citations and alterations omitted).

## DISCUSSION

### I.      Claims Brought on Behalf of DV

Defendants argue that claims brought by Plaintiff on behalf of DV must be dismissed because it is "a well-established general rule in this Circuit that a parent not admitted to the bar cannot bring an action pro se in federal court on behalf of his or her child." *Tindall v. Poultney High Sch. Dist.*, 414 F.3d 281, 284 (2d Cir. 2005). However, after filing the Complaint *pro se*, Plaintiff later obtained pro bono counsel. (ECF No. 62, 63.) Therefore, this issue is now moot and the Court declines to dismiss claims brought on behalf of DV due to lack of counsel. *See Cheung v. Youth Orchestra Found. of Buffalo, Inc.*, 906 F.2d 59, 62 (2d Cir. 1990) (remanding matter to give *pro se* plaintiff bringing claims on behalf of his minor daughter and opportunity to retain counsel to avoid dismissal of complaint).

### II.     Jurisdiction Over WV

Defendants move to dismiss claims brought on behalf of WV because WV is not a named plaintiff in the action. Defendants argue that earlier in the litigation, during a status conference, MTV expressed that this action did not involve claims brought on behalf of WV. Further, following the filing of this case, two separate actions—Case No. 19-cv-10674 and Case No. 21-cv-5365 were filed asserting virtually identical claims on behalf of MTV and WV in which WV is a named Plaintiff. Accordingly, the Court grants Defendants' motion and dismisses all claims brought in this action on behalf and pertaining to WV.

### III.    Exhaustion of Administrative Remedies

*A.       DV*

New York has a two-tier administrative system of review under the IDEA. *Cave v. East Meadow Union Free Sch. Dist.*, 514 F.3d 240, 245 (2d Cir. 2008). It is well-settled that, under the IDEA, an aggrieved party must exhaust these procedures before it can file a suit in federal or state court. 20 U.S.C. § 1415(i)(2)(A); *Cave v. East Meadow Union Free Sch. Dist.*, 514 F.3d 240, 245 (2d Cir. 2008). "A plaintiff's failure to exhaust administrative remedies under the IDEA deprives a court of subject matter jurisdiction." *Polera v. Bd. of Educ. of Newburgh Enlarged City Sch. Dist.*, 288 F.3d 478, 483 (2d Cir. 2002). This exhaustion requirement, however, is "not an inflexible rule." *Murphy v. Arlington Cent. Sch. Dist. Bd. of Educ.*, 297 F.3d 195, 199 (2d Cir. 2002). Specifically, exhaustion is not required where: "(1) it would be futile to resort to the IDEA's due process procedures; (2) an agency has adopted a policy or pursued a practice of general applicability that is contrary to the law; or (3) it is improbable that adequate relief can be obtained by pursuing administrative remedies." *Id*.

Defendants argue that DV failed to exhaust his administrative remedies as required by the IDEA and therefore the Court has no subject matter jurisdiction. Although Defendants acknowledge that MTV filed a due process complaint on behalf of DV and appealed the decision to the SRO, they argue that because MTV voluntarily withdrew her complaint, she failed to satisfy the exhaustion requirement. Plaintiffs acknowledge that MTV withdrew her complaint on remand, but argue that the SAC properly alleges exceptions to the exhaustion requirement, including futility, systemic violations, and deprivation of procedural safeguards.

The Court agrees with Defendants. *First*, Plaintiffs have failed to allege facts suggesting that availing themselves of the IDEA's administrative remedies would have been futile. In fact, MTV was successful in securing remand by the SRO; however, rather than allow the IHO

determine applicable administrative remedies, MTV chose to withdraw her complaint, thereby abstaining from the IDEA's administrative process. *Second*, although Plaintiffs make the conclusory allegation that Defendants engaged in systemic violations, the facts alleged in the SAC pertain only to MTV's children. Therefore, the Court finds that no exception applies on the basis of "systemic violations." *Third*, the vast majority of the facts alleged do not pertain to deprivation of procedural safeguards and the deprivation of procedural safeguards is not what led MTV to withdraw her complaint. Rather, Plaintiffs were free to continue to pursue administrative remedies under the IDEA. *Finally*, the SAC explicitly alleges that the actual reason MTV withdrew her complaint was that MTV was under pressure from dealing with deadlines from her various actions. While the Court is sympathetic to the time and resources MTV may have spent on these matters, this is an insufficient reason to bypass the IDEA's exhaustion requirements. Accordingly, Plaintiffs do not qualify for an exception to the exhaustion requirement of the IDEA and claims brought for violations of the IDEA pertaining to DV are hereby dismissed.

B.      *De Novo Review*

Plaintiffs seek *de novo* review of certain IDEA violations and argue that *de novo* review is appropriate because Plaintiffs first learned of the violations during the administrative review process. The Court disagrees. While Plaintiffs may seek review of violations first raised during the administrative review process *where the violations were subject to review during that administrative process*, Plaintiffs may not seek *de novo* review of violations that have not been subject to administrative review. Accordingly, the Court dismisses Plaintiffs' *de novo* review cause of action for failure to exhaust administrative remedies.

**IV.     Statute of Limitations**

"[A]n IDEA claim accrues when the plaintiff knows or has reason to know of the injury that is the basis of the action." *Somoza v. N.Y.C. Dep't of Educ.*, 538 F.3d 106, 116 (2d Cir. 2008) (citing *M.D. v. Southington Bd. of Educ.*, 334 F.3d 217, 221 (2d Cir. 2003)). Once a claim accrues, a plaintiff has two years to act or risk the claim becoming time-barred. See 20 U.S.C. § 1415(b)(6)(B) (providing that a plaintiff must have "[a]n opportunity ... to present a complaint ... which sets forth an alleged violation that occurred not more than 2 years before the date the parent or public agency knew or should have known about the alleged action that forms the basis of the complaint"); 20 U.S.C. § 1415(f)(3)(C) ("A parent or agency shall request an impartial due process hearing within 2 years of the date the parent or agency knew or should have known about the alleged action that forms the basis of the complaint").

The statute of limitations for Plaintiffs' ADA, Section 504, and Section 1983 claims is three years. *Rekowicz v. Sachem Cent. Sch. Dist.*, 2013 WL 4852305, at *6 (E.D.N.Y. Sept. 10, 2013) (holding that plaintiff's Section 504 and ADA claims subject to three-year statute of limitations); *BD v. DeBuono*, 130 F. Supp. 2d 401, 424 (S.D.N.Y. 2000) (holding that plaintiff's Section 504 and Section 1983 claims subject to three-year statute of limitations).

Defendants seek to apply the IDEA's two-year statute of limitations to Plaintiff's other federal claims because the IDEA claims are virtually identical to the other federal claims and applying a different statute of limitations would frustrate federal policy. In support, Defendants rely on Third Circuit precedent. *See P.P. v. West Chester Area Sch. Dist.*, 585 F. 3d 727 (3rd Cir. 2009). However, Defendants themselves concede that, despite acknowledging the persuasiveness of *P.P.*, courts in the Second Circuit have yet to apply its holding. (ECF No. 28-1 at 6.) Further, in a similar case, considering the same argument presented by Defendants, the Second Circuit declined to reconsider its prior holdings and "apply the IDEA's two-year statute of limitations

12

for Section 504 claims in the education context." *Bd. of Educ. of N. Rockland Cent. Sch. Dist. v. C.M. on behalf of P.G.*, 744 F. App'x 7, 10 (2d Cir. 2018). The Court is bound by the precedent set by the Second Circuit. Therefore, the Court finds that a three-year statute of limitations applies to Plaintiffs' non-IDEA federal claims.[1]

## V.      Section 504 and ADA Discrimination and Retaliation Claims

### A.      *Discrimination*

To establish a *prima facie* case of discrimination under either the ADA or Section 504, a plaintiff must allege that: (1) plaintiff is a "qualified individual with a disability"; (2) plaintiff was "excluded from participation in a public entity's services, programs or activities or was otherwise discriminated against by [the] public entity"; and (3) "such exclusion or discrimination was due to [plaintiff's] disability," *B.C. v. Mount Vernon Sch. Dist.*, 837 F.3d 152, 158 (2d Cir. 2016) (citing *Fulton v. Goord*, 591 F.3d 37, 43 (2d Cir. 2009)) (quoting *Hargrave v. Vermont*, 340 F.3d 27, 34-35 (2d Cir. 2003))).[2]

**Qualified Individual with a Disability**

Defendants argue that Plaintiffs fail to allege MV is a qualified individual with a disability. Under Section 504 and the ADA, a "'disabled individual' [is] one who (i) has a physical or mental impairment which substantially limits one or more of such person's major life activities, (ii) has a record of such an impairment, or (iii) is regarded as having such an

---

[1] The Court declines to address Plaintiffs' argument that the statute of limitations for Plaintiffs' ADA and Section 504 claims is tolled under the doctrine of a continuing violation because the Court dismisses those claims on other grounds below.

[2] Plaintiffs challenge the use of the *prima facie* case as a guiding framework, citing to *Vega v. Hempstead Union Free School Dist.*, 801 F.3d 72, 83 (holding that "an employment discrimination plaintiff need not plead a prima facie case of discrimination at the motion to dismiss stage") (internal quotations omitted). However, *Vega* is in applicable here as it concerns employment discrimination under Title VII and not disability discrimination under the ADA. Nonetheless, even if *Vega* were applicable, it would still be appropriate for the Court to consider the plausibility of the *prima facie* case in its analysis.

impairment." *Weixel v. Bd. of Educ. of N.Y.C.*, 287 F.3d 138, 147 (2d Cir. 2002). "[T]he ADA and IDEA set forth distinct legal standards in their definitions of 'disability,' such that an individual will not qualify for the ADA's protections simply by virtue of his or her disabled status under the IDEA." *B.C.*, 837 F.3d at 160. "[A] child might need[ ] special education and related services by reason of an impairment," as required by the IDEA, "even if that impairment does not 'substantially limit[ ] ... [a] major life activit[y],'" the definition of a disability under the ADA. *Id.* at 159 (comparing 20 U.S.C. § 1401(3)(A), with 42 U.S.C. § 12102(1)(A)). "A plaintiff seeking redress under the ADA must 'show that any limitations are in fact substantial, not amounting to only a mere difference in conditions, manner, or duration.'" *Id.* at 160 (quoting *Bartlett v. N. Y. State Bd. of Law Exam'rs*, 226 F.3d 69, 80 (2d Cir. 1998)). Thus, "[t]hose seeking relief pursuant to ADA or Section 504 must come forward with additional evidence— beyond simply their eligibility for IDEA coverage—showing their eligibility for the remedies afforded by the ADA and Section 504." *Id.* at 161 (internal quotations omitted).

The SAC alleges that MV was diagnosed with autism spectrum disorder ("ASD"), attention deficit hyperactivity disorder ("ADHD"), auditory processing disorder, and language impairment. It also alleges that, as a result of these conditions, MV is limited in major life activities of learning, communication, and socialization. Accordingly, the Court finds that Plaintiffs have adequately alleged MV is a qualified individual with a disability.

**<u>Exclusion or Discrimination</u>**

"Exclusion or discrimination may take the form of disparate treatment, disparate impact, or failure to make a reasonable accommodation." *Mount Vernon Sch. Dist.*, 837 F.3d at 158. "Under the ADA and the Rehabilitation Act, a demand for 'reasonable accommodations to assure access to an existing program' is cognizable; but a demand for 'additional or different

14

substantive benefits' is not." *Streck v. Bd. of Educ. of E. Greenbush Sch. Dist.*, 280 F. App'x 66, 68 (2d Cir. 2008) (quoting *Wright v. Giuliani*, 230 F.3d 543, 548 (2d Cir.2000) (per curiam)). In an action related to a denial of FAPE a complaint must allege "that a school district acted with deliberate or reckless indifference to the student's federally protected rights or with 'bad faith or gross misjudgment.'" *Schreiber v. E. Ramapo Cent. Sch. Dist.*, 700 F. Supp. 2d 529, 564 (S.D.N.Y. 2010).

Here, Plaintiffs fail to adequately allege exclusion or discrimination because the SAC merely challenges the content and sufficiency of MV's IEP and not MV's access to an IEP. *See Streck*, 280 F. App'x 66 at 68 (holding district court properly dismissed plaintiffs' ADA and § 504 claims where an IEP was created and implemented and the complaint merely challenged the content and sufficiency of the IEP). Moreover, the SAC fails to allege any facts suggesting Defendants acted with deliberate or reckless indifference to MV's federally protected rights or with bad faith or gross misjudgment. Accordingly, Plaintiffs' Section 504 and ADA discrimination claims are dismissed.

B.    *Retaliation*

"[T]he elements of a retaliation claim under either Section 504 or the ADA are '(i) a plaintiff was engaged in protected activity; (ii) the alleged retaliator knew that plaintiff was involved in protected activity; (iii) an adverse decision or course of action was taken against plaintiff; and (iv) a causal connection exists between the protected activity and the adverse action.'" *Weixel v. Bd. of Educ. of N.Y.C.*, 287 F.3d 138, 148 (2d Cir. 2002) (quoting *Weixel v. Bd. of Educ. of N.Y.C.*, 2000 WL 1100395, at *4 (S.D.N.Y. Aug. 7, 2000) and citing *Weissman v. Dawn Joy Fashions, Inc.*, 214 F.3d 224, 234 (2d Cir. 2000)).

Plaintiffs allege that they were retaliated against because of MTV's advocacy on behalf of her children. The SAC alleges adverse actions including failure to perform requested

evaluations, failure to provide requested accommodations, and provision of incorrect

information. However, the SAC contains no facts supporting the allegation that there is a causal

connection between MTV's advocacy and the alleged adverse actions. Allegations that Farruggio

typically gets involved with "difficult cases" and believed MV to be receiving more transition

services than any other child in the school district, are insufficient to demonstrate a causal

connection. Accordingly, Plaintiffs' Section 504 and ADA retaliation claims are dismissed.

## VI.    Systemic Violations

As indicated above, systemic violations of the IDEA are not subject to the IDEA's

exhaustion requirement. *J.S. ex rel. N.S. v. Attica Cent. Sch.*, 386 F.3d 107, 113 (2d Cir. 2004).

Plaintiffs allege systemic violations including, but not limited to: (1) avoiding writing IEP goals

and creating relating records, (2) failing to properly assess and monitor performance, (3) failing

to implement appropriate interventions, (4) failing to recognize a student's deficiencies in

functional skills as sign of a need for special education, (5) failing to train staff regarding the

need to provide special CDOS instruction, (6) failing to perform a Functional Behavior

Assessment ("FBA"), and (7) failing to train staff to recognize that indications for an FBA

include evident risk of self-injury. (SAC ¶ 556-562.)

As the Court recently noted in a related case concerning WV's allegations, an FBA is

"not explicitly required to guarantee access to a FAPE." *Vinluan v. Ardsley Union Free Sch.*

*Dist.*, No. 19-CV-10674 (NSR), 2021 WL 1063482, at *9 (S.D.N.Y. Mar. 18, 2021) (citing *M.H.*

*v. New York City Dep't of Educ.*, 712 F. Supp. 2d 125, 159 (S.D.N.Y. 2010), aff'd, 685 F.3d 217

(2d Cir. 2012)). Plaintiffs fail to allege that any of the other violations are systemic. In fact, the

SAC seemingly acknowledges that the alleged violations are "not necessarily rooted in official

written policies, and may, at times contradict [Ardsley's] lawful written policies." (SAC ¶ 554.)

In essence, Plaintiffs allege that the policies are systemic based only off the experiences of

MTV's children, which contradict written, lawful policy. In order to properly allege a systemic

violation, Plaintiffs must allege a "policy of general applicability that is contrary to law [and not]

directed at any individual child." *Reyes v. Bedford Cent. Sch. Dist.*, No. 16-CV-2768 (KMK),

2017 WL 4326115, at *9 (S.D.N.Y. Sept. 27, 2017) (quoting *J.S. ex rel. N.S. v. Attica Cent.

Schs.*, 386 F.3d 107, 113 (2d Cir. 2004)) (internal quotations omitted). Accordingly, the Court

finds that Plaintiffs' systemic violation claims are insufficiently plead and dismisses them.

## VII.    Section 1983 Claims

Section 1983 provides that "[e]very person who, under the color of any statute,

ordinance, regulation, custom, or usage, of any State . . . subjects, or causes to be subjected, any

citizen of the United States . . . to the deprivation of any rights, privileges, or immunities secured

by the Constitution and laws, shall be liable to the party injured." 42 U.S.C. § 1983. Section

1983 "is not itself the source of substantive rights, but a method for vindicating federal rights

elsewhere conferred by those parts of the United States Constitution and federal statutes it

describes." *Baker v. McCollan*, 443 U.S. 137, 144 n.3 (1979); *Paterson v. Cnty. of Oneida*, 375

F.3d 206, 225 (2d Cir. 2004). To state a claim under Section 1983, a plaintiff must allege (1) the

challenged conduct was attributable to a person who was acting under color of state law and (2)

"the conduct deprived the plaintiff of a right guaranteed by the U.S. Constitution." *Castilla v.

City of New York.*, No. 09 Civ. 5446(SHS), 2013 WL 1803896, at *2 (S.D.N.Y. Apr. 25, 2013);

*Cornejo v. Bell*, 592 F.3d 121, 127 (2d Cir. 2010).

The SAC alleges three causes of action under Section 1983: (1) violations of the

procedural safeguards of the IDEA, (2) violations of the Equal Protection Clause, and (3)

violations of the Due Process Clause. Defendants argue that Plaintiff's Section 1983 claims must

be dismissed (1) as against the attorney defendants because they do not qualify as state actors,

(2) as brought by MTV because she lacks standing, (3) as time-barred, (4) because monetary

damages are unavailable for simple violations of the IDEA where Plaintiffs have not been denied

access to the IDEA's administrative remedies, (5) because there has been no denial of access to

constitutional rights, (6) because the SAC fails to state a claim against the named individual

Defendants, and (7) because the SAC fails to allege *Monell* liability.

       A.      *Attorney Defendants*

      Plaintiffs allege that Melnick, an attorney for Ardsley, violated Plaintiffs' due process

rights and conspired against Plaintiffs. Allegations against Melnick include that (1) she distorted

evidence during hearings, including by indicating modifications were made to have MV attend

BOCES during his senior externship; (2) she aided Ardsley in failing to provide MTV with prior

written notice of its intentions; (3) she aided and abetted Ardsley in breaching its fiduciary

duties; (4) she "acted in furtherance of fraud and violations of penal law"; (5) she failed to

answer Plaintiffs' complaint; and (6) she modified the terms of an oral resolution agreement and

attempted to intimidate MTV into waiving her right to pursue non-IDEA claims. Plaintiffs argue

that Schlesinger LLP is liable under a theory of *respondeat superior*.

      Melnick, as a private attorney for Ardsley, cannot be held liable under Section 1983 as a

state actor. *See Condit v. Bedford Cent. Sch. Dist.*, No. 16-CV-6566 (CS), 2017 WL 4685546, at

*6 (S.D.N.Y. Oct. 16, 2017) (explaining that "'[t]he conduct of an attorney acting in his

professional capacity while representing his client does not constitute action under color of state

law for the purposes of § 1983,' even if the client is a state actor"). Schlesinger LLP also cannot

be held liable for a Section 1983 claim. First, Schlesinger's liability is premised on Melnick's

conduct; without a violation on Melnick's part, there cannot be a violation on Schlesinger's part.

Second, *respondeat superior*—which is the sole source of liability Plaintiffs allege—does not

apply to Section 1983 claims. *Polk Cnty. v. Dodson*, 454 U.S. 312, 325, 102 S. Ct. 445, 453, 70

L. Ed. 2d 509 (1981) ("Section 1983 will not support a claim based on a *respondeat superior*

theory of liability."). Accordingly, the Court dismisses the Section 1983 due process claim against the attorney Defendants.

### B. Claims Brought by MTV on Her Own Behalf

Defendants argue MTV lacks standing to bring Section 1983 claims on her own behalf. In *Morgan v. City of New York*, the Court found that a parent lacked standing to bring Section 1983 claims where the parent sought to recover for her own emotional distress. 166 F. Supp. 2d 817, 819 (S.D.N.Y. 2001). Further, a parent may not recover for derivative or collateral injuries under Section 1983. *Love v. Riverhead Cent. Sch. Dist.*, 823 F. Supp. 2d 193, 199 (E.D.N.Y. 2011). Therefore, to the extent MTV seeks to recover for emotional, derivative, or collateral injuries under Section 1983, she lacks standing.

### C. Deprivation of Procedural Safeguards

Plaintiffs MTV, WV, DV, and MV, bring claims against Ardsley, Farruggio, Arietta, Kastin, and Allan for deprivation of rights and procedural safeguards secured by the IDEA. "The IDEA requires that states offer parents of a disabled student an array of procedural safeguards designed to help ensure the education of their child" including access to records, prior written notice, and participation in certain meetings. *Polera v. Bd. of Educ. of Newburgh Enlarged City Sch. Dist.*, 288 F.3d 478, 482 (2d Cir. 2002). "[T]he Second Circuit permits IDEA-based Section 1983 claims, but only where the plaintiff was denied the procedural or administrative remedies that IDEA provides." *Jenn-Ching Luo v. Baldwin Union Free Sch. Dist.*, No. 10-CV-1985 JS AKT, 2011 WL 941263, at *6 (E.D.N.Y. Mar. 15, 2011), aff'd, 556 F. App'x 1 (2d Cir. 2013).

While the SAC contains an array of accusations against each Defendant in this cause of action, only allegations against Farruggio pertain to failure to comply with the IDEA's safeguards—*e.g.*, failing to provide written notice. Because personal involvement must be plead to sustain a Section 1983 claim, the Court dismisses this cause of action against the other

individual Defendants. Further, the SAC fails to state a claim against Ardsley. While it makes the conclusory allegations that Farruggio's actions were indicative of policy, it also acknowledges that Farruggio's actions were contrary to written policy and fails to allege facts consistent with *Monell*. Therefore, the Court denies Defendants' motion to dismiss claims for procedural violations against Farruggio and grants Defendants' motion as to the other Defendants.

> D.    *Deprivation of Due Process*

Plaintiffs MTV and MV also allege that Ardsley, Farruggio, Arietta, Allan, and Kastin deprived them of due process. "It is well settled, however, that a plaintiff asserting a constitutionally based § 1983 claim for procedural violations of the IDEA must establish a constitutional violation 'outside the scope of the IDEA.'" *Engwiller v. Pine Plains Cent. Sch. Dist.*, 110 F. Supp. 2d 236, 250 (S.D.N.Y. 2000); *see Bonar v. Ambach*, 771 F.2d 14, 18 (2d Cir. 1985); *see also* 20 U.S.C. § 1415(e)(2); *Evans v. Bd. of Educ. of Rhinebeck Cent. Sch. Dist.*, 930 F. Supp. 83, 102 (S.D.N.Y. 1996) ("In fashioning remedies for violations of the IDEA, the court is authorized to grant such relief as the court determines is appropriate." (internal quotations omitted)). Accordingly, Plaintiffs' Constitutional due process claims are dismissed.

> E.    *Deprivation of Equal Protection*

Plaintiffs MTV and MV bring claims against Ardsley, Schlesinger LLP, Farruggio, Arietta, Allan, Kastin, Matera, Martino, Fischer, and Melnick for deprivation of equal protection. "The Equal Protection Clause of the Fourteenth Amendment directs that similarly situated individuals be treated alike." *Bal v. Manhattan Democratic Party*, 2018 WL 6528766 at *10 (citing *City of Cleburne v. Cleburne Living Ctr.*, 473 U.S. 432, 439 (1985)). To establish an equal protection violation, a plaintiff must allege (1) "purposeful discrimination directed at an identifiable or suspect class," and (2) "that similarly situated people were treated differently." *Leroy*, 793 F. Supp. 2d at 542 (citing *Giano v. Senkowski*, 54 F.3d 1050, 1057 (2d Cir. 1995);

*Powell v. Powell*, 436 F.2d 84, 88 (2d Cir. 1970); *Gagliardi v. Vill. of Pawling*, 18 F.3d 188, 193 (2d Cir. 1994)).

While many of the allegations in support of Plaintiffs' claim fail to meet this standard because they consist of conclusory allegations regarding policy, disparate treatment, and fraud, Plaintiffs adequately allege that Defendants altered credentialing standards and requirements in order to cause MV's premature graduation. However, the SAC fails to allege facts supporting purposeful discrimination. Accordingly, Plaintiffs equal protection claims are dismissed.

## VIII.   Section 1985 Claims

Section 1985(3) prohibits two or more persons from conspiring for the purpose of depriving any person of the equal protection of the laws or of equal privileges and immunities under the laws. 42 U.S.C. § 1985(3). To adequately plead a claim under § 1985(3), a plaintiff must allege "(1) a conspiracy; (2) for the purpose of depriving, either directly or indirectly, any person or class of persons of equal protection of the laws, or of equal privileges and immunities under the laws; [and] (3) an act in furtherance of the conspiracy; (4) whereby a person is either injured in his person or property or deprived of any right of a citizen of the United States." *Mian v. Donaldson, Lufkin & Jenrette Sec. Corp.*, 7 F.3d 1085, 1087 (2d Cir. 1993); *see Thomas v. Roach*, 165 F.3d 137, 146 (2d Cir. 1999)). A Section 1985(3) claim also requires "some racial, or perhaps otherwise class-based, invidiously discriminatory animus behind the conspirators' action." *Griffin v. Breckenridge*, 403 U.S. 88, 102 (1971).

Plaintiffs fail to plead conspiracy claims because there are no allegations in the SAC to suggest a class-based animus. Accordingly, Plaintiffs' conspiracy claims are dismissed.

## IX.   Punitive Damages

Defendants seek to dismiss Plaintiffs' punitive damages claims on the basis that Plaintiffs' Section 1983 and 1985 claims are insufficiently plead. Since the Court finds that

Plaintiffs properly pled a Section 1983 claim against Farruggio, Defendants' motion is granted as to the other Defendants and claims and denied as to the claim against Farruggio.

## CONCLUSION

For the foregoing reasons, Defendants' motion to dismiss is GRANTED in part and DENIED in part. Specifically, the Court dismisses all claims except Count One, Count Four as against Farruggio, and Count Eleven as against Farruggio. As Plaintiffs commenced this action and briefed this motion *pro se*, the dismissed claims are dismissed without prejudice, Plaintiffs are granted leave to file a Third Amended Complaint on or before August 25, 2021. Should Plaintiffs fail to file a Third Amended Complaint, the Second Amended Complaint shall be deemed the operative complaint. Defendants are directed to answer, or otherwise respond to, the operative complaint on or before September 24, 2021. If Defendants file an answer, the parties are directed to jointly complete and submit a Case Management Plan and Scheduling Order (blank form attached hereto) by October 11, 2021. The Court will issue an Order of Reference to Magistrate Judge Paul E. Davison and the parties are directed to contact Judge Davison within seven (7) business days of the date of the Order of Reference to schedule a conference.

Dated: July 27, 2021                                    SO ORDERED:

White Plains, New York


_____

NELSON S. ROMÁN

United States District Judge

22